## UNITED STATES v. BOARD et al.

(District Court, W. D. Kentucky, at Louisville. July 31, 1926.)

### No. 376.

1. Internal revenue ⊂⟶7(11), 9(27)—Sale by stockholders of all corporation's stock would not be subject to income and excess profits tax against corporation, but sale of corporation's assets would be (Revenue Act 1918, §§ 327, 328 [Comp. St. §§ 6336⅛j, 6336⅛k]).

If contract wherein stockholders purported to sell all their stock to another corporation constituted sale of stock, no income or excess profits tax would be due by corporation under Revenue Act 1918, §§ 327, 328 (Comp. St. §§ 6336⅛j, 6336⅛k), but, if it constituted sale of corporation's assets, corporation would be taxable on gain realized.

2. Evidence ⊂⟶400(3)—Extraneous evidence held admissible to show for tax purposes real agreement, purporting to be sale by stockholders of all corporation's stock.

Government is not bound by face of contract, purporting to be sale of all corporation's stock by stockholders, in determining tax liability thereon, but by extraneous evidence may determine real agreement, and taxpayer has same right.

3. Contracts ⊂⟶153.

In construing contract, that construction should be given, if possible, which renders it enforceable, rather than unenforceable.

4. Corporations ⊂⟶182.

Notwithstanding Ky. St. § 883b, as re-enacted by Acts Ky. 1918, c. 15, stockholders, as such, cannot, under Kentucky law, sell assets of corporation, but sale can only be made by directors.

5. Internal revenue ⊂⟶7(11), 9(27)—Contract purporting to be sale of all corporation's stock by stockholders held untaxable sale of stock and not of assets (Revenue Act 1918, §§ 327, 328 [Comp. St. §§ 6336⅛j, 6336⅛k]).

Contract purporting to be sale by stockholders of all corporation's stock, in view of evidence that parties considered it to be sale of stock, and of Kentucky law, under which stockholders cannot sell corporation's assets, held sale of stock, and not sale of corporation's assets, and transaction was not taxable under Revenue Act 1918, §§ 327, 328 (Comp. St. §§ 6336⅛j, 6336⅛k).

6. Internal revenue ⊂⟶23(2).

Under Revenue Act 1918, § 250, subd. (d), Revenue Act 1921, § 250, subd. (d), Revenue Act 1924, §§ 277, 278, subds. (a), (d), (e), suit to collect deficiency of income and excess profits tax assessed under Revenue Act 1918, on returns filed December 26, 1918, April 14, 1919, was barred, in absence of claim that returns were false (Comp. St. §§ 6336⅛tt, 6336½zz[4], 6336½zz[5]).

In Equity. Suit by the United States against Robert V. Board and others. Bill dismissed.

W. S. Ball, U. S. Dist. Atty., of Louisville, Ky., and A. W. Gregg, Gen. Counsel, Bureau of Internal Revenue, and I. R. Blaisdell, Bureau of Internal Revenue, both of Washington, D. C., for the United States.

Elwood Hamilton and H. H. Nettelroth, both of Louisville, Ky., for defendants.

DAWSON, District Judge. On the 26th day of December, 1918, the Dixie Motor Car Company, a Kentucky corporation, filed with the collector its return for income tax and excess profits tax purposes for its fiscal year ending October 31, 1918. The company showed by this return that it owed taxes in the sum of $642.33, which amount seems never to have been paid to the government. This return was filed under the Revenue Act of 1916 (39 Stat. 756), as amended by the Revenue Act of 1917 (39 Stat. 1000). After it was filed, the act designated as the Revenue Act of 1918 was passed, that act having been approved on February 24, 1919 (40 Stat. 1057). Inasmuch as this act by its provisions was retroactive, covering all of the calander year 1918 and any fiscal year ending during that calendar year, a supplemental return was filed by the motor car company on the 14th day of April, 1919, covering its fiscal year ending October 31, 1918. This return showed a total tax due of $1,018.33, which amount was paid to the collector. Thereafter the Commissioner of Internal Revenue caused a field audit to be made of the taxpayer's books and records, and found that the total tax due for the fiscal period in question was $1,757.19, and that, after giving the taxpayer credit by $1,018.33 already paid, there was remaining due and unpaid as income and excess profits taxes for the fiscal period in question the sum of $738.-86, for the payment of which demand was made, but same has never been paid. This additional assessment by the Commissioner resulted from his disallowance of a depreciation claim of $6,716.93 set up by the taxpayer in its return.

The Dixie Motor Car Company was dissolved as a corporation in the month of June,

1919, and on the 29th day of December, 1919, it filed a return to cover the period extending from November 1, 1918, to December 31, 1918; this return bearing a notation to the effect that it was a final report and that the company had dissolved. This return showed a net operating loss, and, of course, reported no tax due. On December 30, 1918, all the stockholders of the Dixie Motor Car Company signed a contract with the Kentucky Wagon Manufacturing Company, a Kentucky corporation, by the terms of which it is claimed by the defendants in this case that these stockholders sold all of their common and preferred stock in the Dixie Motor Car Company to the Kentucky Wagon Manufacturing Company. The government contends, however, that this contract, when properly construed, was not one of sale of stock by the stockholders, but was a contract for the sale of the assets of the Dixie Motor Car Company to the Kentucky Wagon Manufacturing Company. The Commissioner caused a field audit of the Dixie Motor Car Company's books to be made for the period covered by the report of the taxpayer filed on December 29, 1919, and, construing the contract in question as one of sale of the taxpayer's assets, reached the conclusion that as a result of this transaction the company had actually made a taxable profit of $60,600.62, and therefore assessed against the motor car company an income and profits tax of $34,660.45 and a penalty of 50 per cent. of the tax, amounting to $17,330.23, as authorized by law in case of false and fraudulent returns made for the purpose of evading the tax.

This bill in equity was filed on May 18, 1925, against the defendants, all of whom were stockholders of the Dixie Motor Car Company, for the purpose of having the assets of the Dixie Motor Car Company, which it is claimed these stockholders received in liquidation of the corporation's business, declared to be a trust fund for the payment of the taxes in question. An amendment to the bill was subsequently filed, showing that in April, 1926, pursuant to a request by the defendants, the Commissioner of Internal Revenue redetermined the tax liability of the Dixie Motor Car Company for the taxable period extending from November 1, 1918, to January 1, 1919, under the provisions of sections 327 and 328 of the Revenue Act of 1918 (Comp. St. §§ 6336⁷/₁₆j, 6336⁷/₁₆k). Upon such re-examination by the Commissioner, the tax liability of the Motor Car Company for that period was fixed at $21,330.50 and the penalty at $10,665.25. Therefore, upon the issues as finally completed, the government

seeks recovery for the sum of $738.86, deficiency tax for the fiscal year ending October 31, 1918, and for $31,995.75, tax and penalty for the period extending from November 1, 1918, to January 1, 1919.

[1, 2] In determining the liability of the defendants for the tax and penalty claimed by the government for the period extending from November 1, 1918, to January 1, 1919, a vital question is whether the contract of December 30, 1918, was a sale of stock by the stockholders or a sale of company assets. If construed as a sale of stock, then of course the motor car company realized no profit, and no tax would be due. If construed to be a sale of company assets, then the motor car company is liable for the income and profits taxes on the gain realized as the result of the transaction. If the court were forced to construe this contract upon its face alone, there would be some difficulty in determining just what the parties were attempting to do, as on its face it contains many features of a sale of stock by the stockholders, as well as provisions which ordinarily would be found only in a contract selling the assets of a corporation. In such a situation, even as between the parties to the contract, the court would be justified in resorting to extraneous evidence to determine what the real intention of the parties was. It is well settled that, in determining tax liability on contracts such as the one in question, the government is not bound to accept the contract upon its face, but may burrow under the words used in the contract and by extraneous evidence, if necessary, determine the real agreement between the parties. Certainly the taxpayer should be accorded the same right to demonstrate by extraneous evidence, where the contract is ambiguous, what the real contract was.

[3] There is another cardinal rule in the construction of contracts which are susceptible of two meanings, viz. that that construction should be given, if the facts justify it, which would render the contract enforceable, rather than to adopt a construction which would render it unenforceable.

[4, 5] With these principles in mind, it is difficult to reach any other conclusion than that this contract was a sale of stock by the stockholders. To construe the contract as one of sale of assets of the corporation would, in effect, be to declare it an unenforceable contract, because it is well settled that stockholders, as such, under the Kentucky law, cannot sell the assets of a corporation. It is true that, under section 883b of Kentucky Statutes (Acts Ky. 1918, c. 15), no sale of all of a corporation's assets is valid, unless consent-

ed to by the holders of not less than three-fourths of the capital stock of the vendor corporation, which consent must be evidenced in writing, or by a vote at a special meeting of the stockholders called for that purpose; but such consent does not effectuate a sale of the assets. Under the Kentucky law the affairs of the corporation must be conducted by a board of directors, and, notwithstanding the consent of the stockholders to the sale of the corporation's assets, the contract of sale must be executed by the board of directors of the corporation. No such action on the part of the board of directors is shown in this record. Therefore the instrument should be construed as a sale of stock by the stockholders, rather than as an attempt by the stockholders to sell corporate assets, if the instrument and the evidence heard reasonably admit of such a construction.

An examination of the minutes of the so-called special meeting of the stockholders held on February 6, 1919, shows that Mr. Duffin, in calling to the attention of the stockholders the contract of December 30, 1918, refers to the contract as "a proposition from the Kentucky Wagon Manufacturing Company to purchase all the stock of the Dixie Motor Car Company and consolidate it with the Kentucky Wagon Manufacturing Company." This contract was signed by all the stockholders, setting out in detail the amount of preferred stock and common stock which each of them owned, its par value, and what they were to be paid for same, and the proof shows that not only all the stockholders regarded the transaction as a sale of their stock, but that the wagon manufacturing company officials regarded the transaction in the same light, and the transaction was closed by the various stockholders surrendering to the National Bank of Kentucky their stock, and receiving from that bank, as the agent of the wagon manufacturing company, in exchange therefor, the price agreed to be paid for their respective holdings.

There is nothing in the record to justify the conclusion that the form of contract was adopted for the purpose of evading taxation, because, had that been the purpose, it could have been fully and unquestionably accomplished by making it a sale of stock in such plain terms as that there would have been no ground for controversy. It seems to the court that the ambiguity in the contract arose, not from any desire to disguise the transaction, but from a disregard on the part of the draftsman of the usual and ordinary steps taken to accomplish the purpose they had in mind, viz. the sale of the stock and a subse-quent dissolution and winding up of the affairs of the corporation. For the reasons stated, the court is of the opinion that the transaction in question was not a sale of corporate assets, and that therefore there was no taxable gain realized by the motor car company upon which a tax could be assessed.

[6] This leaves open only the question of the right of the government to collect from the defendants in this case the deficiency assessment of $738.86 on the two returns of the motor car company for its fiscal year ending October 31, 1918, one of which was filed, as heretofore stated, on the 26th day of December, 1918, and the other on the 14th day of April, 1919. The defendants claim that the right of the government to recover on this item is barred by limitation. Subdivision (d) of section 250 of the act of 1918 (Comp. St. § 6336⅛tt) provides as follows:

"Except in case of false or fraudulent returns with intent to evade the tax, the amount of tax due under any return shall be determined and assessed by the Commissioner within five years after the return was due or was made, *and no suit or proceeding for the collection of any tax shall be begun after the expiration of five years after the date when the return was due or was made. In the case of such false or fraudulent returns the amount of tax due may be determined at any time after the return is filed, and the tax may be collected at any time after it becomes due.*"

Subdivision (d) of section 250 of the act of 1921 (Comp. St. § 6336⅛tt) in part provides as follows:

"The amount of income, excess profits or war profits taxes due under any return made under this act for the taxable year 1921 or succeeding taxable years shall be determined and assessed by the Commissioner within four years after the return was filed, and the amount of any such taxes due under any return made under this act for prior taxable years or under prior income, excess profits or war profits tax acts, or under section 38 of the act entitled 'An act to provide revenue, equalize duties, and encourage the industries of the United States, and for other purposes,' approved August 5, 1909, shall be determined and assessed *within five years after the return was filed*, unless both the Commissioner and the taxpayer consent in writing to a later determination, assessment and collection of the tax; and no suit or proceeding for the collection of any such taxes due under this act or under prior income, excess profits or war profits tax acts, or of any taxes due under section 38 of such Act of August 5, 1909, shall be begun, after the expiration of five years

after the date when such return was filed, but this shall not affect suits or proceedings begun at the time of the passage of this act: * * * Provided further, that in the case of a false or fraudulent return with intent to evade tax, or of a failure to file a required return, the amount of tax due may be determined, assessed and collected, and a suit or proceeding for the collection of such amount may be begun, at any time after it becomes due."

Section 277 of the Revenue Act of 1924, approved June 2, 1924 (Comp. St. § 6336⅙zz[4]), in part reads as follows:

"(a) Except as provided in section 278, and in subdivision (b) of section 274, and in subdivision (b) of section 279—

* * * * *

"(2) The amount of income, excess profits and war profits taxes imposed by the act entitled 'An act to provide revenue, equalize duties, and encourage the industries of the United States, and for other purposes,' approved August 5, 1909, the act entitled 'An act to reduce tariff duties and provide revenue for the government, and for other purposes,' approved October 3, 1913, the Revenue Act of 1916, the Revenue Act of 1917, the Revenue Act of 1918, and by any such act as amended, shall be assessed within five years after the return was filed, and no proceeding in court for the collection of such taxes shall be begun after the expiration of such period."

Subdivision (a) of section 278 of the act of 1924 (Comp. St. § 6336¹/₆zz[5]) reads as follows:

"In the case of a false or fraudulent return with intent to evade tax or of a failure to file a return the tax may be assessed or a proceeding in court for the collection of such tax may be begun without assessment, at any rate."

Subdivision (d) of section 278 of the act of 1924 reads:

"Where the assessment of the tax is made within the period prescribed in section 277 or in this section, such tax may be collected by distraint or by a proceeding in court, begun within six years after the assessment of the tax. Nothing in this act shall be construed as preventing the beginning, without assessment, of a proceeding in court for the collection of the tax at any time before the expiration of the period within which an assessment may be made."

Subdivision (e) of section 278 of the same act is as follows:

"This section shall not (1) authorize the assessment of a tax or the collection thereof by distraint or by a proceeding in court if at the time of the enactment of this Act such assessment, distraint or proceeding was barred by the period of limitation then in existence, or (2) affect any assessment made, or distraint or proceeding in court begun, before the enactment of this act."

From the quoted sections of the acts referred to it will be observed that, except in case of false or fraudulent returns, made with intent to evade the tax, under the 1918 act suit for the collection of the tax could not be commenced after the expiration of five years after the date when the return was due or made, and that under the act of 1921 suit for the collection of the tax could not be commenced after the expiration of five years after the date when the return was filed; that act, however, adding certain other exceptions —not important here to note—under which suit might be brought after the expiration of five years from the filing of the return. The act of 1924 extended the time within which suit might be brought on account of taxes accruing under the Revenue Acts of 1916, 1917, 1918, and 1921 for six years following the assessment of the tax, provided the assessment was made within five years after the return was filed, and provided, further, that the right to bring such action was not barred under such previous statutes at the time the Revenue Act of 1924 was enacted.

The last return filed by the motor car company for its fiscal year ending October 31, 1918, was filed on April 14, 1919. Under the acts of 1918 and 1921, no suit could have been brought to collect taxes on this return after the expiration of five years from the filing of this return. Five years from April 14, 1919, expired on April 14, 1924. Therefore, under the express provisions of subdivision (e) of section 278 of the act of 1924, the right to maintain suit at any time within six years after the assessment, given by subdivision (d) of that section, has no application, unless the court should find that the two returns made by the taxpayer for the fiscal year ending October 31, 1918, were false and fraudulent and made with intent to evade the tax. The record wholly fails to show that the returns were made with any such intention. The Commissioner himself evidently did not so regard the matter, because, when he made the deficiency assessment on those returns, he made no assessment of penalty for a false and fraudulent return.

The court is therefore of the opinion that the right of the government to maintain suit for $738.86 was barred on June 2, 1924, at the

time the act of 1924 was enacted into law, and, of course, was barred at the time this suit was filed on May 18, 1925.

It follows, from these conclusions, that plaintiff's bill must be dismissed, and a decree conforming to the views herein expressed may be drawn and presented for entry.

NOTE.—The following is a copy of the material parts of the contract considered in this case:

"Know all men by these presents: That we, the undersigned, being all of the stockholders of the Dixie Motor Car Company, a corporation duly organized under the laws of the state of Kentucky, do now and hereby bargain, sell, transfer, and deliver to the Kentucky Wagon Manufacturing Company, a corporation duly organized under the laws of the state of Kentucky, all of the assets of the said Dixie Motor Car Company, of every kind, character, and description, wherever situated and located, including all trade-marks, trade-names, catalogues, patents, designs, blueprints, templets, patterns, orders on hand for future delivery, orders placed with others for raw materials, supplies, and parts, contracts, accounts and bills receivable, choses in action, machinery, equipment, supplies, finished products, and accessories, in consideration of the said Kentucky Wagon Manufacturing Company assuming and agreeing to pay all of the liabilities of said Dixie Motor Car Company, of every kind and character whatsoever, and in addition thereto to pay to each of the preferred stockholders the following sums set opposite their respective names:

"To the preferred stockholders, for their holdings of class A stock and class B stock, as provided in and by the articles of incorporation and amendments thereto, one hundred and eleven thousand six hundred ($111,600.00) dollars, to be paid in cash by the Kentucky Wagon Manufacturing Company to the following persons, to wit:

\* \* \* \* \* \* \*

"And also such accumulated dividends at 7 per cent. per annum from and after January 1, 1919, to each of the foregoing preferred stockholders.

"To the common stockholders, whose stock aggregates the par value of $110,600, a total of $138,250, as follows:

\* \* \* \* \* \* \*

"The foregoing sums to be paid in cash, or its equivalent, satisfactory to each of said common stockholders.

"It is further understood and agreed that the said Dixie Motor Car Company will, by the unanimous consent of all of its stockholders, hereinbefore set forth, close its business and wind up its affairs, as provided in and by the Statutes of the state of Kentucky, and especially section 561 (Carroll 1915), and immediately thereafter effect a complete dissolution of the corporation, and then, in addition to the foregoing assets mentioned herein, transfer and deliver to the Kentucky Wagon Manufacturing Company the remaining cash on hand, if any, after duly and properly closing its fiscal year as of October 31, 1918, and as shown by the statement of the date, with which both parties hereunto are familiar, the understanding being that all business transacted and all earnings made since October 31, 1918, shall be and become the property of said Kentucky Wagon Manufacturing Company.

"It is further understood that, in addition to closing said business as of October 31, 1918, the said Dixie Motor Car Company shall transfer from its previous earnings, earned and belonging to it previous to October 31, 1918, fifteen hundred ($1,500.00) dollars to said Kentucky Wagon Manufacturing Company, the same being an estimated sum necessary and proper to recover possible defective parts that may have to be replaced free of charge.

"In witness whereof, each of the preferred and common stockholders of said Dixie Motor Car Company, the same being all of the stockholders of said Dixie Motor Car Company, do now and hereby affix their signatures hereunto, with the understanding that this agreement shall be valid and binding, when all of said preferred and common stockholders have hereunto affixed their signatures, and each of them do now and hereby consent in writing that the said Dixie Motor Car Company shall close its business and wind up its affairs. And we do now and hereby authorize Robert V. Board, president of and for the Dixie Motor Car Company, to cause notice to be published, as provided by section 561 of the Statutes of the state of Kentucky (Carroll 1915), and authorize, empower, and direct said Robert V. Board, president of said Dixie Motor Car Company, to sign any and all papers, deeds, conveyances, transfers, checks, notes, and accounts as are necessary and proper to effectually turn over all of said assets of said Dixie Motor Car Company to said Kentucky Wagon Manufacturing Company, and to collect, receipt for, and receive in our names, and to transmit to us, the sum or sums to which we, and each of us, are entitled, as stated herein, within a reasonable time from and after this date, December 30, 1918, and in witness whereof, the said Kentucky Wagon Manufacturing Company has this 30th day of December, A. D. 1918, affixed its signature hereunto for the purposes herein stated."